May it please the Court, my name is Daniel Blank, and I represent Marcel King, the appellant in this case. I will endeavor to reserve five minutes for rebuttal. Your Honors, probationers are fundamentally different from parolees, and that's why this Court should hold that reasonable suspicion is required for a probation search. Why do you say fundamentally different? What's the fundamental difference? I mean, they're both convicted, right? They are both convicted, and they've The Supreme Court has said it's significant. It is, it is significant, and actually they both have reduced expectations of privacy, which is also significant. But parolees have to have been, have to be felons, and they have to have been sentenced to prison. Well, in this case, your client was a convicted felon, and he was sentenced to serve a term of incarceration as one of the terms and conditions of his probation. That's correct. How is he fundamentally different from a parolee who has been released from incarceration? In this case, it was only six months, but then ordered to be on active supervision subject to the terms and conditions of his probation, which included the search provision that you're challenging. Here's the difference, is that for a parolee sentenced to prison, a judge, someone, either the legislature or the judge in the judge's discretion, has to make a determination that probation, more leniency, is not appropriate under the facts and circumstances of that case. The other alternative is that the legislature has said, across the board, as a matter of law, probation is not allowed. There's a mandatory minimum prison sentence. But in Mr. King's case, the San Francisco Superior Court judge could have sentenced him to state prison for up to, what is it, four years? I believe that's correct. And at that point, assuming that he kept his nose clean while he was in prison, he would be released on parole subject to active supervision by a state parole officer. Correct. With many of the same terms and conditions. So I'm still looking for the fundamental difference. I was getting there. So the fundamental difference is that the probation requires an act of discretion by the district court judge. Looking at the facts and circumstances of the case, the history and characteristics of the defendant, and makes a decision that, on that case, probation is appropriate or not. Parole is appropriate. I'm sorry. Prison is appropriate. This is exactly what Judge Kleinfeld discussed in his concurrence in Crawford, in which he said that probationers and parolees are near opposite ends of the spectrum. Now, he didn't quite say that. He said there is a difference between the two. But let me go back to your statement about, didn't the sentencing judge here make a choice as to whether or not he would place Mr. King on active probation as opposed to inactive probation? I believe, Your Honor, it means supervised probation or... I mean, there is a difference, right? I mean, you can either put somebody on probation and say, look, don't violate any future laws, but you're not going to have to report to a probation officer. You're not going to have to go to school for domestic violence. You're not going to be subject to all these conditions. But in this case, the judge decided because it was, I assume, because it was a crime of violence and he had a prior record, that a more active supervision was necessary. He actually had no prior record, Your Honor. That was his first conviction. But getting back to Your Honor's question, it said 372 F. 3rd at 1076 to 77, quote, near opposite ends of the punishment scale, is how Judge Kleinfeld described probationers versus parolees. Counsel, I'm sorry. I have a completely different question. Okay. And that is, why are we having this discussion? I don't mean that literally. But in 2011, the Supreme Court held in Davis that the exclusionary rule does not apply when the police are following binding precedent. And certainly in 2010, the binding precedent of this court permitted exactly what the officers did here. We had to go in back to change it because it was binding precedent. Why isn't, in terms of the harm to this particular individual, why isn't that the end of the case? There are two answers to that, Judge Graber. One is a legal question, a legal response, and the other is a factual, and I want to give you both. Here's the factual response, is that the government bears the burden. Actually, there's also a procedural one. The factual response is that the government bears the burden of showing that there was actual reliance on a binding appellate authority under Davis, and that that reliance was objectively reasonable. We're missing the first step here. There's been no indication the government has met any burden of showing that the officers in this case … Why isn't that the government has never argued this at all? Well, that's the procedural issue, is that that's waived. This whole argument about Davis is waived. But if — and so Your Honor shouldn't consider it at all. There's a third part that I wondered about with regard to Davis and also with regard to the probation substantive question. And that is whether it makes any difference precisely what the condition said. Now, we held the last time that it didn't make a difference, but this condition was different than that was in any of the other cases. It is significant, and the Supreme Court has said so in both nights and in San Francisco. And I wonder why that doesn't have a Davis impact as well, in that we had to hold that because it wasn't prior precedent as to that particular question. That's an excellent point, Your Honor. I would add that to my other view about the waiver, about the fact that the government hasn't demonstrated actual reliance. If you look at the record, what the police officers in this case were focused on was getting the consent of the mother. They claimed that they had the consent of the mother, so not consent — Mr. King's consent to conditions. It's the actual consent of the mother to do that very search that day. And that was a contested issue of fact. The district court never resolved. So even if we were to grant your argument, wouldn't we have to remand for an evidentiary hearing on the factual basis for the consent of the mother? You don't, and here's why. It's the government's burden. So the government needed to show, and they had every opportunity to show, that what the officers were doing, like in Leon, for example, was a fact — Except they did make this very argument at the trial court. I think Judge Talman's question is where the argument was made and the fact there were some facts there, but the trial court declined to rule on it, then don't we have to say that? That is with regard to the consent of the mother. Right. With regard to the consent of the mother. But I was raising that for a different reason. And the reason I'm pointing to that is that what the record shows is not that the officers were relying upon any binding appellate authority. In other words, what the officer testified to at the evidentiary hearing, what the officer's report is not, well, I was aware of Sanchez v. Canales. And so my understanding is that the binding appellate authority — Counsel, that's not required. At the time they checked and they determined that he was subject to the search requirement, and there was extant California Supreme Court authority upholding these sorts of searches. It's a factual question, and the reason why I pointed to mom's consent is significant as a factual matter, and here's why. If the officers believed that they had authority under binding precedent to do a search without reasonable suspicion, they wouldn't have needed to try so hard to get mom's consent. And not only did they claim that they got verbal consent from her before the search. What they asserted is that they got written consent from her afterwards. Well, they could have been belt and suspenders. I don't think the fact of asking the mother for consent necessarily means they thought they needed it. Why would that be? Well, at a minimum, the record is absent of any statement from the officers regarding relying on a binding authority. The analogy would be to Leon, and, Leon, you're relying on a bad warrant. It would not have been upheld under Leon if the officers didn't say, well, we actually looked at a warrant. If the officers went in and did a search without any warrant at all. What case can you cite to us that says that the officer must actually recite case authority before he can act in conformance with existing law? No, Your Honor, they don't have to name the actual case, but there has to be some statement by the officers that there was actual reliance. But they testified that they were relying in part on the fact that he was subject to a search condition. Subject to a search condition, but not that it was without reasonable suspicion. Well, where – this is sort of a sub-argument of a contention that in any event, it was never raised. It was never raised, and it's the same – exactly. This issue about Davis is an interesting one, but it was never raised by the government at any stage. But if we were to think, consider raising it, I mean, raising it ourselves, where is this discussion that you're talking about in Davis that suggests that there has to be actual reliance? I mean, I understand they use the term reliance, a good-faith exception conducted in reliance on binding precedent, but that's mushy language that shows up – I mean, there are cases which say that and then say, but we don't I mean, you really have to rely, not in this context, but in others, like a retroactivity context. I'm not aware of any case in this context from – starting with Leon through Davis, where there is – there would permit constructive reliance. What that would be saying is that in Leon, where there was a bad warrant, the officers don't have to say that they even looked at a warrant. They did a warrantless search, and there was a warrant that facially was okay, but it turned out to be bad. But constructively, they relied upon it even though they never saw it. That's not what reliance – Is there anything in Davis itself, other than a sentence such as the one that I was just alluding to, that uses the term reliance? There was – it was not contested in Davis that there was actual reliance in that case, so there was no question that the officers were aware of. What they talk about in Davis was training, that these – this precedent had been on the books for a long time pre-Gantt, and that they were trained on how to do that post-Belkin. But all you're saying about that is all of that might have happened, but because they never erased it, it was never litigated. Correct, Your Honor. I have four and a half minutes. If it pleases the Court, I'll save the balance. Thank you. You may do so. We'll hear from the government. May it please the Court.    автом Kair dlaCoffee, and Susann Miles for the United States. This Court may affirm on any one of three independent grounds, consent, reasonable any of the others that I have seen. I've looked through all the cases. Some of them said warrantless, and some of them said warrantless without probable cause and without reasonable cause, and some of them said without cause. But none of them said warrantless and without probable cause, which seems to me applies some cause. And the fact that there are these variants in conditions floating around in the California cases suggests to me that some difference is meant, and these are imposed individually by judges. And why should he have known, and why should we know, that this wasn't written that way on purpose, i.e., not to negate reasonable cause, as has been negated in many other cases, but not in this one? For two reasons, Your Honor. Number one, because his particular search condition by saying with or without probable cause set a ceiling, but it didn't set a floor. And so we know that it needed to be less than probable cause, but the Court did not indicate explicitly that it needed to be something greater than suspicion. But California courts are routinely imposing much more specific provisions. Why don't we – why wouldn't he think and why don't we think that this one is less onerous? Because the California Supreme Court in Bravo addressed that very issue. I don't see why that matters. First of all, the Bravo one wasn't the same either. The Bravo one said warrantless, but it didn't say anything about cause, so it didn't have any negative implication. But second of all, for our purposes, the question is how does this feed into the set of circumstances that determine his reasonable expectation of privacy, because Scott seems to negate the consent issue. So for that purpose, why – that's a Federal purpose, it seems to me. And a totality of circumstances sort of a purpose. And why doesn't the actual language matter? Let me unpack that question. First of all, I'm going to put Scott aside for a minute, and I will get back to that. But to answer the specific question about how we know what this search condition meant, Bravo does answer that. And you're right, Your Honor, that the language in Bravo was a little bit different, but Bravo actually answered the exact question that Your Honor is asking. Where there's very – But why does that matter? Okay. That's how they're construing it for California purposes. But our question is what was his reasonable expectation of privacy? And if – and we did hold in the last go-around in this case that it didn't matter for – for one set of purposes, but for the set of purposes of looking at all of the circumstances that define his expectation of privacy, why isn't this relevant? Because the interpretation of the State court's judgment is a matter of State law. The government put in a 28-J letter with authority to that proposition, and that's true. Even though there's a Fourth Amendment component, whether this search condition as defined by California passes Fourth Amendment muster is a Federal issue that's in front of the court. The actual interpretation of the judgment order itself is a matter of State law, and this court is bound by Bravo. And Bravo did ask the question about what if we have variations in the exact language of the condition. Bravo was comparing the language in Mason, which was different from the language that was in place in front of it. And what it said is we can't have this kind of confusion. We can't have police officers being forced to parse out the meaning of individual search clauses to determine whether there are different layers or variations in the cause that they're required to have. Instead, we need a unified definition. And what Bravo said is where a search condition says that a search can be done warrantlessly, with or without a warrant. And this search condition had that language in it. That means the suspicionless search is okay. This court is bound by that decision in Bravo. Now, whether that then passes Fourth Amendment muster, you're right, Your Honor, that is a question for this court to decide. But the meaning of the actual condition itself is settled, and this court is, that question isn't really before this court. Well, it seems to me that if we are to interpret the condition the way that Mr. King wants us to interpret it, it would forbid his probation officer from stopping by unannounced at his home or place of business and looking around to make sure that he's complying with the terms and conditions. You're right, Your Honor. I think it would go too far. I think it's well settled that probation officers can come without a suspicion, without suspicion, and do a home visit or another kind of search. And so even under the court's decision in Scott, which relied expressly on Consuelo Gonzalez, importantly here, this condition would be fine. If you look at Consuelo Gonzalez, Consuelo Gonzalez itself answered the question of who can search, not why they can search. And so even though that was a Federal Probation Act case, it was pre-Sampson. And so even the holding on the who can search, there held only probation officers and not police officers can search. Sampson has done away, I believe, with that piece of the holding. When it got down to why can an officer search? In Consuelo Gonzalez, this court actually said that a probation officer can search based on a hunch, that it doesn't need reasonable suspicion. And so to the extent that there's any piece of Consuelo Gonzalez that still remains and that Scott incorporated, it actually goes against the defendant's position here. And as I understand it, to the extent that there's a concern that even the probation officer might overstep his authority, there is in California law a requirement that there be no evidence of harassment or arbitrary and capricious. That's right. There's safeguards at the execution stage of this, without a doubt, both in the Federal law and California law. California Supreme Court has held repeatedly, it cannot be harassing, it cannot be arbitrary, it can't be capricious. And the Supreme Court's decision with regard to, in the prison context, where we're looking at, for instance, the case regarding strip searches of prisoners, what we see there is that that same limitation is in place. In Bell v. Wolfish, what they held was that strip searches in a prison context are allowable, but only under certain circumstances. Only if the government's legitimate expectation or need to do them is appropriately defined. So we always have that limitation on the execution of these search clauses. They cannot be arbitrary, they cannot be capricious, and they can't be harassing. That's correct. I take it from your initial comment that you, at least implicitly, and now I will ask you explicitly, agree that the Davis question is waived. No, Your Honor, I don't believe that the Davis question is waived. And why not? Because there – this Court can affirm on any grounds supported by the record. And you're asking us to kind of do all the research and do all the work. I mean, you're not asking us to do anything. And if we were to do this, we would have to make up this argument ourselves because you've never made it. And I have to believe that there must be a reason, such as, for example, you would like a ruling on the substantive question. It's true, Your Honor. We have not pressed the issue. Now, whether we have not – It would not fall to any degree whatsoever. That's correct, Your Honor. However, it's still within this Court's discretion to rule on those grounds if it wishes to. The consent argument, however, is one that we have argued. And to the extent that the defendant is claiming that that argument is waived, that's simply untrue. That argument has been presented to this Court in this briefing. It was presented in front of the en banc court, and that is a viable ground on which this Court can decide. For example, you're not having to raise the Davis argument. We now have a Davis argument being made as to the need for particular reliance or not particular reliance, and we have no argument from you one way or the other on that. So what are we supposed to do with that if we want to – I mean, if you were – what considerations do we go into to decide whether to decide an issue that has never been raised and has nuance? Your Honor, the underlying factual aspect has been created by – the record has been created by the government. There is absolutely reliance.   I can't get a clear example of whether there was any training done on the – with regard to these questions. Do we know whether these particular agent – these particular police officers knew about our prior precedent, which is different than that in other circuits and there isn't any Supreme Court precedent. It was inconsistent with the Supreme Court precedent, which is why we held what we did. And you've given us none of it. Your Honor, what we do have are the facts. We have at ER 173 – 172 to 173, during the evidentiary hearing, there was explicit questioning of the officer whether there was in fact a warrantless search condition listed. And the officer said that there was a warrantless search condition that was in place for Mr. King, but he checked that before he conducted the search. And under well-settled 25-year-old California precedent, that was relevant to him. And we have always maintained that this search was done pursuant to the search clause. The fact is the California Supreme Court had – I mean, no, the United States Supreme Court had in Knight specifically refused to rely on the consent issue and has never settled it, and moreover, has never – has said that probation was not a warrantless search condition, and that all makes for binding precedent. Yes, Your Honor, because where the Supreme Court has not spoken, the California State court may, and that precedent is binding at that point. As this Court held explicitly or noted explicitly in Kincaid, this question is wide open in the Federal courts. And so where there is an issue of constitutional importance that is left open by the Federal courts, the State courts may speak. And the officer should be able to rely on that. Your Honor, I'm sorry. I was going to say, in Knight's itself, the Supreme Court dropped footnote 6, which expressly left that question open. And so if the Supreme Court has expressly left the question open, but the California Supreme Court has decided it, I can't see why it would be unreasonable for a California law enforcement officer to rely on the highest court of the State. Neither can I, Your Honor. I think it was entirely reasonable. That's exactly what the officer was supposed to do, and that's exactly what he did. He ensured under California law, as he was required to, that there was a condition in place. That's not a Federal requirement. That's a State requirement that goes above and beyond what the Fourth Amendment requires. He ensured that that condition was in place for Mr. King, and he went to that house to execute that search condition. And so on those grounds, this Court may affirm. Ginsburg, what about the underlying Fourth Amendment question with regard to consent? Let's put that to the side for now. This, for the same reasons articulated in both Sampson and Knight's, a suspicionless search of a probationer is reasonable. When Sampson made its decision with regard to parolees ---- But Sampson said that parole and probation were different, and Knight didn't decide the question. So you can't rely on them. You have to rely on something, some analysis that perhaps they wrote, but we need the analysis, not the case. And I think Sampson's analysis applies that. It did say that probationers and parolees are different, but when it did its analysis and reached its conclusion, it relied on all of the similarities, not on the differences. When it stated what the government's interest was with regard to parolees, it was exactly the same government interest that was stated in Knight's. And in fact, Sampson cites to Knight's and to Griffin almost exclusively in reaching its conclusion. With regard to the government interest side of the equation, it stated that the government has an interest in searching people who are on supervised release because of the need to rehabilitate, the need to try to reintegrate these folks back into society in a law-abiding manner, and because of the higher rate of recidivism that is shared by both parolees and probationers. All of those considerations which were stated in Knight's were carried through to Sampson in creating the government side of that equation. And the same is true for the limited expectation of privacy on the part of probationers. Again, Sampson relied almost exclusively on the rationale in both Knight's and in Griffin by stating that a few things are relevant. Number one, that the condition of this release is made known to the defendant when they're released, that it is a condition, and so they are on notice, and that's significant. Both Sampson and Knight's held that that is a salient point, that the probationer is made aware of this condition, and that reduces their expectation of privacy. And that, of course, is totally circular. I mean, you can tell them anything. You can tell me that. You can give me a condition, too, and tell me that you can search any citizen for, and that doesn't make it true. And that's why the Court looked at that. And you can't take any one of these by itself. What you need to do is be able to balance the totality. So even though, Your Honor, you could be notified, the government doesn't have the same compelling interest on the other side of the equation. And the Court in Schneckhoff looked at that. The Court in Sampson also acknowledged it, that you can't simply notify a person without the counterbalance in government interest and reach the same conclusion. But here, where the government interest is countervailing, you can reach that conclusion because of this point on the legitimate expectation of privacy. And, again, all of the points that Sampson looked at were echoes from Knight's, that the defendant is unambiguously informed of the condition, that they are subject to other restrictive conditions as a condition of their release, the fact that they're convicted, the fact that they're serving their criminal sentence, and that they could be subject to imprisonment and instead are being permitted to be on release because of the conditions that are imposed. Sotomayor, if somebody was in prison, and where they have essentially no Fourth Amendment rights while in prison, can somebody search their house? While they're in prison? I don't believe they can, Your Honor. I don't believe it would give rise to any kind of evidence. Because the complete lapse of Fourth Amendment rights while in prison has something to do with the fact that they're actually in prison and that there's needs that arise from the prison circumstances, which don't carry over to the same degree with regard to people when they're let out. And it seems to me that Sampson came to its conclusion because they viewed this as essentially a continuation of being in prison, which isn't really true with regard to a probation. I see that I'm out of time. May I answer the questions? Please. Thank you. Your Honor, you're correct that Sampson said that there was – that parole was not the basis of their decision. When they listed out the reasons for why a parolee has a limited expectation of privacy, it is not because they were simply released from prison and come out from a lower expectation of privacy into another low expectation of privacy. It's because of all of the other individualized considerations that I've listed out, because of the recidivism rate, because of the conditions that are imposed. All of those factors that are listed in Sampson are pulled from Knights, are pulled from Griffin, and hold true for probationers as well. Unless the Court has any other questions. We do not. Okay. Then we will rest on our briefs. Thank you. Mr. Blank, you have some time remaining. Thank you very much, Your Honor. I do want to address the issue of consent. I just want to make it clear that I have not had the opportunity for responsive briefing on this issue. So that's one of the reasons – Which issue? Consent. Which consent? The consent to the conditions. Okay. Now, you fully briefed the consent with the right or wrong. Exactly. And that's why this Court should deem it to be waived. It was raised for the first time in the opposition to my petition for a hearing in Bank, to which I don't get a response. Then we had concurrent briefing here, and I knew that they were going to raise it, but I didn't know the scope or the nuanced arguments that they were going to make. There's lots that I would do and I will try to do now. For example, in addition to – Well, we could remedy that by giving you more briefing opportunity. If anything, I would request that. And if there's anything that I say piques your interest, that would be terrific. In addition to Scott, which I think is totally dispositive of this issue in its reliance on Consuelo – But doesn't Scott basically say it's a factor that we consider in the balancing process? It's not dispositive. No. That's how I read it. No, I disagree. Scott says – It's not that way. It's that we are relying on the conditions, that that precludes the application of a constitutionally unreasonable search. But Knight and Sampson do say that the condition is a factor in considering the execution. Yes. I misunderstood the question. Of course. What the condition says is relevant. That's how I read it. And it came out before Sampson and after Knight. But what Scott concludes, relying on Consuelo, is that there cannot be a situation in which an otherwise unconstitutional search condition can be deemed to be consented to by the person in exchange for their being on supervision. That's what Scott says. But the other issue I wanted to raise is about Shibu. Counsel, the condition in Scott was the warrantless drug or urine analysis, wasn't it? That may be correct. So here it's a different condition, and we would have to determine whether or not the condition itself is an unconstitutional condition. Well, the government's already conceded that for you. In Knight's, the government affirmatively conceded that the doctrine of unconstitutional conditions applies to probation conditions generally. But Scott also was pretrial release, was it not? It was, but it relied upon. Excuse me. Is there not a difference between a person who is still presumed innocent and one who has been conclusively found guilty? Not with respect to the consent issue, and here's why. Scott, Judge Kaczynski and Scott, expressly relied upon Consuelo, which is a probation case. And so analogized to it saying it doesn't matter whether they're on pretrial release or on probation, it's the same issue about whether unconstitutional conditions precludes that kind of consent. But what I do want to get to is this issue that voluntariness under Schneckloth is a factual question. And although the California courts apply it as a legal matter, and they say it's a legal matter in Bravo, we will deem you to have consented within the understanding of Schneckloth v. Bustamante once you accept your conditions. This Court has never done that. No court I'm aware of, Federal Court, has done that. Instead, it's been a factual issue, and it's the government that bears it. Excuse me. What do we make of the idea that we look to state law not for the constitutional analysis, but for the meaning of a sentence? For example, whether calling something a mouse, you know, it might be something we would consider to be probation. Is this part of the meaning of a sentence, or is this something else? It's something else. I mean, what that means under state law, it can and should be considered within the terms of that. But what someone's expectation of privacy means is a Fourth Amendment analysis. That's a Federal Constitution analysis. But if state law were to say that this is a transaction between the state and the individual, and by this transaction you're permitted to be out of prison if but only if you agree to a set of conditions and we're going to define what those conditions mean, is that something that state law can't define, that transaction? They can't define it for this Court. They can't define it for Federal Court. That question of whether the doctrine of unconstitutional conditions precludes consent to an otherwise unreasonable search condition is one of Federal Fourth Amendment law. It's not one of state construction of a particular consent. And it collapses the questions into each other, because whether it's an unconstitutional condition depends on whether this person is actually giving up Fourth Amendment rights, and that depends whether he has Fourth Amendment rights. So the two questions essentially become one, don't they? I.e., the consent question and the free-floating Fourth Amendment question become the same question. I don't think they're the same, but Your Honor is exactly correct. They do rely upon one another. But we can actually look back to Consuelo. And what happened in Consuelo is that this Court rewrote a condition of release I'm sorry, probation, a search condition to make it constitutional. It was just a general you can be searched. And then this Court said even though that has been accepted by this probationer, that is constitutionally unreasonable. And we're literally going to rewrite the condition to say what it would be and inserted the reasonableness issues of it there. And that's why Judge Kuczynski relied upon it in Scott. What that showed is that it's not, although it's significant, it's not dispositive that someone accepts a condition. You can't say, well, you know, that would have been constitutionally unreasonable, but for the fact that it's part of a transaction you accepted it. I thought it was a pretrial release question. And so he certainly had Fourth Amendment rights that they were giving up if he enforced those. And so that's why I say here if one thought Sampson applied, then there wouldn't be any problem because there wouldn't be an unconstitutional condition because there wouldn't be anything unconstitutional to give up. That's correct. If this Court finds as a matter of Fourth Amendment law, the first issue, the one that I thought we were going to be focusing on when we did our briefing, if you say no, probationers are exactly like parolees and suspicionless search is fine, then under the Fourth Amendment, then there's no issue of unconstitutional conditions. The question is if the Court would say under the Fourth Amendment totality of the circumstances analysis, if you don't agree to a condition like that, then you have some protections, but by virtue of the fact of taking on a condition, you've consented as a matter of law, then you have the problem of the unconstitutional conditions. And Scott, again, I just want to emphasize, relied on Consuelo, which was a probation case. So that's the significance is that Scott, yes, is pretrial, but the authority that Scott relied on was Consuelo, which was an in-bank case in 1975. It's a very old case, and that's where Scott derived its authority. So although there are differences between pretrial releases and probationers, those weren't significant to Judge Kaczynski, and his source of authority applies specifically to probationers. Thank you, counsel. You've exceeded your time. I have. Thank you. The case just argued is submitted. We appreciate very much the speculative and helpful arguments from both counsel, and we will be adjourned.
judges: Graber, Berzon, Tallman